IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Judge John L. Kane

Civil Action No. **08-cv-00381-JLK**

**JULIE MEEK**,

    Plaintiff,

v.

**ZURICH NORTH AMERICA INSURANCE COMPANY,**

    Defendant.

---

ORDER ON FINAL REVIEW OF ADMINISTRATIVE RECORD

---

Kane, J.

This case arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Julie Meek claims that Zurich North America Insurance Company ("Zurich") violated ERISA when it issued its final determination letter dated February 13, 2008, upholding its earlier decision in a letter dated September 12, 2007, denying her accidental death benefits claim filed regarding her husband, Harold Meek. Harold Meek was a participant in an employee welfare benefit plan which included two blanket accidental death insurance policies issued by Zurich to Anadarko Petroleum Corporation, Mr. Meek's employer.

Mrs. Meek asserts that Zurich wrongfully breached a contractual duty to provide benefits under the blanket accidental insurance contracts when it denied her claims. She asks me to order

1

Zurich to pay any benefits that are past due, as well as interest, attorney fees, and costs.  Zurich seeks affirmance of its decision denying accidental death benefits and dismissal of plaintiff's claim with prejudice.  Zurich also filed a counter-claim, to enforce the terms of the policies.

The Administrative Record (Doc. 22) and Mrs. Meek's Opening Brief (Doc. 21) were simultaneously filed on September 22, 2008. Zurich filed its Response Brief (Doc. 25) on November 5, 2008, and Meek filed her Reply Brief (Doc. 28) on December 10, 2008.  The parties stipulated that no trial is necessary and that the Court should determine Meek's claim based solely upon the Administrative Record before the Court.   I have withheld my decision in this case for over a year pending the appeal of a factually similar case, *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment and Dependent Life Ins. Plan*, 2007 U.S. Dist. LEXIS 40022 (D. Colo. 2007).[1]  *LaAsmar* has been fully briefed for nearly eighteen months, and it is uncertain when the 10th Circuit will issue its opinion.  I am not inclined to force the parties to assume the roles of Vladimir and Estragon in waiting for a decision, the arrival of which is the subject of conjecture and speculation.  Accordingly, as I find no fault with Judge Krieger's ruling in *LaAsmar*, judgment is granted in favor of Plaintiff Julie Meek.

---

[1] The underlying facts in *LaAsmar* are nearly indistinguishable from the facts in this case. In *LaAsmar*, a life insurance beneficiary appealed the decision of the plan administrator to withhold payment of benefits under the policy's accidental death provisions.  The deceased, Mark LaAsmar, died in a motor vehicle accident.  The investigating officer suspected that LaAsmar was intoxicated at the time of the accident, and a post-mortem lab report indicated that LaAsmar had a blood alcohol level of .227g/dl.  The insurance company found that (1) because LaAsmar was intoxicated at the time of the vehicle rollover, there was no "accident"; and (2) the voluntary consumption of alcohol constituted a purposefully self-inflicted injury within the meaning of one of the policy exclusions. Applying *de novo* review, Judge Krieger rejected the Defendant's restrictive definition of "accident" and found that LaAsmar's death was covered under the terms of the policy.

*Jurisdiction*

The parties agree that Mrs. Meek's claim is governed by ERISA. Therefore, the Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). Further, as the parties are citizens of different states and the amount in controversy exclusive of interest and costs exceeds $75,000, jurisdiction is also proper under 28 U.S.C. § 1332.

*Factual and Procedural Background*

At the time of his death, Mrs. Meek's husband, Harold Meek, was a participant in an employee welfare benefit plan which included two accidental death and dismemberment (AD&D) policies issued by Zurich to Anadarko Petroleum Company, Mr. Meek's employer. The first, the Basic AD&D Policy, provided $48,000 in coverage for covered accidental deaths for eligible employees of Anadarko. The second, the Supplemental AD&D Policy, provided $400,000 in coverage for covered accidental deaths for covered employees of Anadarko. Both policies provide, "[i]f injury to a Covered Person results in loss of life we will pay the Principal Sum shown in the Schedule." Policy # GTU-8364499, AR 504; Policy # GTU-8364496, AR 548.[2] Injury is defined as "an accidental bodily injury which is a direct result, independent of all other causes, of a hazard set forth in the 'Description of Hazards.'" Policy # GTU-8364499, AR 504; Policy # GTU-8364496, AR 548. In turn, the "Description of Hazards" states, "The hazards insured against by this policy are . . . Injury sustained by a Covered Person anywhere in the world."[3] Policy # GTU-8364499, AR 509; Policy # GTU-8364496, AR 552. Both policies

---

[2] Citations to the record will be made in the following form "AR ___."

[3] The "Description of Hazards" includes a variety of exclusions, none of which is applicable here.

exclude coverage for a "purposely self-inflicted injury." Policy # GTU-8364499, AR 505; Policy # GTU-8364496, AR 549.

On March 18, 2007, Harold Meek died as a result of bodily injuries suffered in a motorcycle accident.[4]  While driving home from a local watering hole, Meek lost control of his motorcycle, left the road, and struck a utility pole on the side of Colorado Highway 34.  He was found dead on the scene.  The police report indicated inebriation was suspected, and the autopsy revealed a blood alcohol concentration of 0.153 g/dl, well in excess of the legal limit of 0.08 g/dl.

Based on the police report and the autopsy findings, Zurich determined that Meek's death was not an "accident" within the meaning of the policy and denied Mrs. Meek's claim.[5]  In reaching this determination, Zurich relied on a 2005 decision from the District of Kansas defining "accident" in terms of reasonable foreseeability.  Letter from Patricia Lane, Claims Specialist II, Zurich Insurance Company to Julie L. Meek (Sept. 12, 2007), AR 487, 489 (citing and quoting *Cowser v. Am. Mut. Life Ins. Co.*, 2005 U.S. Dist. LEXIS 15288 (D. Kan. 2005)).  Zurich concluded that, as a reasonable person in Harold Meek's position "would have had [an expectation of death or injury] from driving with a blood alcohol level that was approximately two times the State maximum for driving under the influence," *Id.*, his death was not covered under the terms of either policy.

---

[4]  Here, I use "accident" in the colloquial sense, which is defined in Merriam Webster's Third New International Dictionary as a "sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." *Merriam Webster's Third New International Dictionary* 11 (1976).

[5]  The policy does not define the term "accident."

4

Zurich asserted an alternative grounds for denying the claim.  Relying on its determination that Harold Meek's death was not an "accident," but instead a reasonably foreseeable outcome of his intentional decision to drive while intoxicated, Zurich determined that Harold Meek's death resulted from a "purposely self-inflicted injury."  Under the language of both policies, such a death was excluded from coverage.  Mrs. Meek appealed the denial of her claim.  AR 771-877.

In her appeal to Zurich's ERISA Appeals Committee, Mrs. Meek first argued that her husband was not legally intoxicated at the time of his death.  In support of this argument, she offered affidavits of those who had witnessed her husband's drinking on the day of his death, as well as the report of Kathey Verdeal, Ph.D., a toxicology consultant. Based in large part on the affidavits and the constant rates of bioaccumulation of alcohol, Verdeal concluded that Mr. Meek could not possibly have been legally intoxicated at the time of his death.  As explanation for the elevated blood alcohol level in the autopsy report, Verdeal asserted that diffused beer from the stomach can result in elevated post-mortem blood level.  Coupled with the decision to take Meek's blood sample from the iliac vasculature instead of the femoral artery, Verdeal argued that the post-mortem blood sample was scientifically invalid.  In the alternative, relying upon Judge Krieger's opinion in *LaAsmar,* Mrs. Meek argued that even if her husband was intoxicated at the time of his death, his death was "accidental" and not a "purposefully inflicted injury" as a matter of law.

Zurich's ERISA Review Committee denied the appeal.  AR 965-968.  First, the Committee found that Meek was intoxicated at the time of his death.  In reaching this finding, the Committee relied upon the findings in the autopsy report, as well as an expert report by Dr.

Patricia Rosen, a board-certified toxicologist. Dr. Rosen's report found that the alcohol level in the autopsy report was likely an accurate representation of Meek's blood alcohol level at the time of his death. The report also cast doubt upon the findings of Verdeal's expert report, specifically questioning the bases for asserting a possibility of post-mortem contamination. Further, the Committee found that, under applicable precedent, Meek's death was not an "accident" within the meaning of the policy. The Committee specifically addressed Judge Krieger's opinion in *LaAsmar*, expressing a belief that it "is not consistent with the case law throughout the country, and [that they] do not believe that this approach would be adopted by the 10th Circuit."[6] AR 966.

Following the denial of her ERISA appeal, Mrs. Meek filed a complaint in this Court seeking the above noted relief.

### *Standard of Review*

A claim for benefits under ERISA brought in the district court is reviewed through an appellate lens. Except in rare circumstances not applicable here, my review is limited to the administrative record. *See Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1202 (10th Cir. 2002). The administrative record consists of the materials compiled by the administrator in the course of making its decision, and includes arguments and evidence before the administrator at the time it made its decision. *See Hall*, 300 F.3d at 1201; *Sandoval v. Aetna Life & Cas. Ins.*

---

[6] In reaching this conclusion, the Committee relied upon *Cowser v. Am. United Life Ins. Co.*, 2005 U.S. Dist. LEXIS 15288 (D. Kan. July 6, 2005) (discussed *supra* at p. 4); *Cozzi v. Metro. Life Ins. Co.*, 140 F.3d 1104 (7th Cir. 1998) (holding that Defendant's interpretation of the term "accident," which was not defined in the plan, was not arbitrary and capricious because it was reasonably foreseeable that the insured, being intoxicated, would suffer a fatal injury if he got behind the wheel of an automobile ); and *Lennon v. Metro. Life Ins. Co.*, 504 F.3d 617 (6th Cir. 2007) (Holding that it was not arbitrary and capricious for the Defendant to conclude that death caused by reckless drunk driving was not accidental).

*Co.*, 967 F.2d 377, 380 (10th Cir. 1992).

I must review "a decision denying benefits under an ERISA plan *de novo* unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Deboard v. Sunshine Mining & Refining Co.*, 208 F.3d 1228, 1241 (10th Cir. 2000) (quoting *Capital Cities/ABC, Inc. v. Ratcliff*, 141 F.3d 1405, 1408 (10th Cir. 1999); citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Here, both parties agree that a *de novo* standard of review applies. Plaintiff's Opening Brief, Doc. 21, p. 20; Defendant's Answer Brief, Doc. 25, p. 17. When review is *de novo*, I must give the policy language the common and ordinary meaning which a <u>reasonable person in the position of the named insured</u> would have understood the words to mean. *See Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996). Accordingly, I afford no deference to either party's interpretation of the policy language. Mrs. Meek bears the burden of proving a covered loss under the policies, and Zurich bears the burden of proving that an exclusion applies. *See Blair v. Metro. Life Ins. Co.*, 974 F.2d 1219, 1221 (10th Cir. 1992).

*Analysis*

The parties do not contest that Harold Meek was a "Covered Person" under the terms of the AD&D policies or that Julie Meek is the beneficiary. Thus, I begin by determining whether Mrs. Meek has met her burden of proving a covered loss under the policies. This, in turn, requires the resolution of two questions.

First, was Meek intoxicated at the time of his death? On this point, I find the record to be relatively clear. The autopsy report indicated that, sixteen hours after the time of his death, Mr. Meek had a blood alcohol level of 0.153 g/dl – nearly twice the legal limit in the state of

7

Colorado. As part of the appeals process, Zurich's ERISA Appeals Committee considered the autopsy report, as well as the expert reports of Kathy Verdeal, Ph.D. and Dr. Patricia Rosen. As noted above, Dr. Verdeal, Mrs. Meek's retained expert, argued that this post-mortem blood draw was scientifically invalid. She also argued that, based on the affidavits collected nine months after the incident, Meek's blood alcohol level could not have exceeded the legal limit at the time of his death. Dr. Rosen counters that there is no evidence to support Dr. Verdeal's finding that the post-mortem blood draw and analysis were contaminated. She further questions the accuracy of the information Dr. Verdeal relied upon in determining that Meek could not have been legally intoxicated at the time of his death.

I have thoroughly examined both of these reports, as well as the autopsy report. I find no reason to question the validity of the post-mortem blood draw. The speculation and conjecture in Dr. Verdeal's report establish no concrete basis for finding any evidence of contamination or invalidity. Absent any concrete evidence supporting a finding of contamination, the mere possibility that alcohol in Meek's stomach could have diffused after his death is insufficient evidence of contamination. This is especially true because the evidence casts doubt upon the two most likely causes of any contamination. Most notably, Meek's stomach and bladder were not perforated or otherwise compromised as a result of his accident. Furthermore, Dr. Verdeal's assertion that the decision to draw blood from the iliac vasculature instead of the femoral artery increased the chance for false elevation is contradicted by her own acknowledgment that "[t]he blood draw from the iliac vasculature, in this case, was a good attempt to minimize alcohol contamination which would falsely elevate the reading." Expert Report of Kathy Verdeal, Ph.D., AR 787.

Perhaps recognizing the need to support her assertions, Dr. Verdeal seeks to buttress her suggestion that the post-mortem blood draw was contaminated, citing calculations of Meek's blood alcohol content based on information contained in the affidavits submitted during the appeals process. Specifically, Dr. Verdeal calculates that based on the affidavits, which suggest that Meek consumed eight 12-oz. beers on the day of his death and four 12-oz. beers in the hour before his death, he could not have been legally intoxicated at the time of his death. I am not persuaded by these calculations, however, as I do not find the information contained in the affidavits to be entirely credible. It is likely that, at the time of observation, the perception of the parties giving the affidavits was influenced by their own alcohol consumption. I also find significant that these affidavits were prepared at least nine months after the time of the accident. I reject the affidavits as an entirely accurate recreation of the events leading up to Meek's death – especially in light of the findings in the autopsy report and the circumstances of his death. I see no reason to disturb the finding of the autopsy report that Meek was legally intoxicated at the time of his death. Having determined that Meek was intoxicated at the time of his death, I will now determine whether his death was an "accident" within the meaning of the AD&D policies.

The policies at issue here do not define the term "accident." Accordingly, the applicable policy language terms have the meaning consistent with the understanding of a reasonable person in the position of Meek. I note the significance of this standard. In the cases relied upon by Zurich in denying Mrs. Meek's claim, the courts reviewed the denial of claims under an "arbitrary and capricious" standard.[7] Under such a review, a court must "uphold an administrator's decision 'unless it is not grounded on <u>any</u> reasonable basis.'" *Graham v.*

---

[7] See *supra*, n. 6.

*Hartford Life & Accident Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009) (quoting *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (emphasis in original))). My review is not so constrained. Accordingly, I focus not on whether Zurich articulated any reasonable basis for its interpretation, but instead on the understanding of the policy terms of a reasonable person in the position of Meek.

Just as Judge Krieger rejected the technical, legalistic definition espoused by the Defendants in *LaAsmar*, I too reject the technical, legalistic definition espoused by Zurich. Despite the best efforts of many a Torts professor, I think it highly unlikely that a reasonable person in Harold Meek's position would have understood the term "accident" in terms of reasonable foreseeability.[8] Instead, I find it probable that Harold Meek "would have understood the term 'accident' in a motor vehicle context to simply refer to an event involving the vehicle . . . ." *LaAsmar*, 2007 U.S. Dist. LEXIS 40022, *14. As noted above, such a colloquial understanding of the term depends not upon the relative foreseeability of the incident; it focuses upon the sudden, involuntary nature of an incident resulting in an unfortunate result.[9]

There is ample support for Judge Krieger's ruling and I adopt her reasoning as my own.[10]

---

[8] Even if I were to adopt the "foreseeability" standard proposed by Zurich, I find it highly questionable whether accident or death is an objectively foreseeable outcome of a person's decision to drive under the influence of alcohol. I find the court's ruling in *West v. Aetna Life Ins. Co.*, 171 F. Supp. 2d 856 (N.D. Iowa 2001) particularly informative on this point. After a thorough analysis and discussion of the Federal Bureau of Investigation's traffic fatality statistics for the year 1996, Chief Judge Bennett noted, "[a person choosing to drive under the influence of alcohol] is far more likely to be arrested for driving while intoxicated than to die or be injured in an alcohol-related automobile crash, and far more likely to arrive home than to be either arrested, injured, or killed."

[9] *See supra* n. 4.

[10] Though Zurich correctly notes this decision is not binding authority, it is well within my discretion to consider the ruling of another judge within this district. To the extent that

I am also persuaded by the 6th Circuit's ruling in *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323 (2009). In *Kovach*, Zurich denied a claim under an AD&D Policy because Kovach was legally intoxicated at the time of his motorcycle accident. Applying "arbitrary and capricious" review, the District Court found Zurich's denial reasonable under the circumstances. On appeal, however, the 6th Circuit found that Zurich's grounds for denying the claim (grounds identical to those asserted in response to Mrs. Meek's claim) were unreasonable, reversed the District Court's decision, and remanded the case for the entry of a judgment in favor of the Kovaches.

In both *Kovach* and the instant case, Zurich could amend its AD&D policies to exclude coverage for a death resulting from driving under the influence of drugs and/or alcohol. It has not, however, done so. Despite Zurich's best arguments to the contrary, I decline to adopt an interpretation of the term "accident" which would amount to "an additional, unwritten exclusion for all drunk-driving injuries." *Kovach*, 587 F.3d at 338. Though, as many other courts reviewing such an interpretation through the lens of "arbitrary and capricious" review have held, such an interpretation may be reasonable, I do not find it to be consistent with the common and ordinary meaning which a person in the position of Harold Meek would have understood the word "accident" to mean. Having determined that Mrs. Meek has met her burden of proving a covered loss, I now determine whether Zurich has met its burden of proving an applicable exclusion.

Even though Mrs. Meek has met her burden of proving that her husband's death was a covered loss, Zurich argues that Harold Meek's death falls within the meaning of the policies' exclusion for a "purposefully self-inflicted injury." I am not convinced by Zurich's arguments;

---

Zurich argues the law of the 5th Circuit governs this case, I have found no cases on point in that Circuit which could guide my decision in this case.

to the contrary, I find Judge Krieger's reasoning in *LaAsmar* convincing and directly applicable in the instant case. The policies at issue do not define "purposefully self-inflicted injury." Thus, I must decide what a reasonable person in Harold Meek's position would have believed the exclusion to mean.

The exclusion, when read as it would be understood by a reasonable person in Harold Meek's position, implies some form of concerted effort on the part of Meek to cause injury to himself. Though I certainly question the wisdom of driving while intoxicated, unless large portions of our society are engaged in frequent attempts to commit suicide, the prevalence of this offense suggests that it is not sufficient evidence of an intent to inflict injury on oneself. There is nothing in the record which suggests, let alone establishes, that Meek either consumed alcohol or drove thereafter with the specific intent to harm himself. "One might easily judge [Meek's] conduct to be reckless and unlawful, but absent evidence of his intent to injure himself, this exception does not apply." Id. at *16.

Despite the likely understanding of this exclusion by a reasonable person in the position of Harold Meek, Zurich argues that proof of a specific intent to injure oneself is not required to prove that a death was purposeful under the terms of the policy exclusion. Zurich argues that Mr. Meek's death was a foreseeable result of an intentional decision to drive his motorcycle while intoxicated. Relying on *Nelson v. Sun Life Assurance Co. of Canada*, 962 F. Supp. 1010 (W.D. Mich. 1997), Zurich asserts that the standard is reasonableness, and that Mr. Meek's decision to drive under the influence of alcohol was objectively unreasonable. Even if reasonableness is accepted as the standard by which "purposefulness" is judged within the context of these policies, for the reasons discussed above, I am not convinced that death or injury

is the likely outcome of a person's decision to drive under the influence of alcohol.[11] Accordingly, I find that Zurich has failed to meet its burden of proving the applicability of any exclusion barring coverage under the policy.

*Conclusion*

Digressing for a moment, I think it necessary to clarify the purpose and scope of this ruling. Each year, countless lives are ruined by the effects of drunk driving. In light of these impacts, society has chosen to criminalize this conduct. I personally find deplorable those who choose to drive under the influence of alcohol in disregard for both their own safety and the safety of others. My personal moral judgment, however, is irrelevant to my decision in this case. In fact, it is completely inappropriate to allow any moral predisposition to cloud my interpretation of the relevant language of the insurance policies at issue. I must instead give meaning to the terms of these policies as an ordinary, reasonable person in the position of Harold Meek would understand them. Likewise, I refrain from commenting about the reasonableness, *vel non*, of riding a motorcycle under any condition.

Returning to the case at bar, I am well aware that justice in this case has been long delayed. I find it inappropriate to require either party to continue waiting for Godot, or, as the case may be, the 10th Circuit's ruling on the appeal of Judge Krieger's opinion in *LaAsmar*. As I find Judge Krieger's opinion to be thoughtful, well-reasoned, and consistent with the progression of the law in this and other judicial circuits, judgment is granted in favor of Mrs. Meek. It is therefore ordered that the denial of benefits by Zurich is reversed. Judgment shall enter awarding Mrs. Meek accidental death benefits in accordance with the policies issued in the

---

[11] *See supra* n. 8.

name of her husband, Harold Meek. Consistent with Colorado state law, pre-judgment Interest in the amount of 8 % shall also be awarded in order to restore lost earnings and profits to Mrs. Meek. *See* Colo. Rev. Stat. 5-12-102; *see also Allison v. Bank One - Denver*, 289 F.3d 1223, 1244 (10th Cir. 2002) (approving the District Court's granting of pre-judgment interest). Each party shall bear her or its own costs.

Dated: March 9, 2010

             **s/John L. Kane**
             SENIOR U.S. DISTRICT JUDGE